IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 15-00121-3 |
| WESLEY THOMAS | |

**PAPPERT, J.**                                                                                                   January 8, 2021

**<u>MEMORANDUM</u>**

Wesley Thomas seeks compassionate release or a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court denies the Motion because extraordinary reasons do not warrant Thomas's release and, in any event, the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

A

On March 26, 2015 Thomas was charged with four counts of Hobbs Act robbery and four counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). (Indictment, ECF No. 1.) He pleaded guilty to all four counts of robbery and two of the § 924(c) counts pursuant to a plea agreement. *See* (Judgment 1, ECF No. 66); (Gov't Resp. 3, ECF No. 127).

Thomas and his codefendants robbed four grocery stores in Philadelphia and stole $1,900 in cash, numerous packs of cigarettes, a laptop and one store's employees' cell phones. *See* (Mot. for Release 18, ECF No. 124); (Gov't Resp. 1–2). Thomas acted as the getaway driver. (Gov't Resp. 1.) He also scoped out two of the stores and reported back to his confederates ahead of the robberies. *See* (*id*.); (Plea Mem. 8, ECF No. 30). The two defendants who entered the stores carried a handgun and a starter

1

pistol that appeared to be a firearm. (Gov't Resp. 1–2.) One brandished the handgun and demanded money from employees at gunpoint. (*Id.* at 1.) He also grabbed a store owner, held the gun to the store owner's head and hit the store owner in the head with it while demanding more money. (*Id.* at 2.)

Thomas faced a mandatory minimum sentence of thirty-two years for his two § 924(c) convictions, including seven years for the first conviction and twenty-five for the second, which the law required him to serve consecutive to one another as well as any term of imprisonment for robbery. (Plea Mem. 3–4.) But the Government's plea agreement with Thomas enabled the Court to impose less than the required twenty-five year term for the second § 924(c) conviction. (Gov't Resp. 21.) Departing substantially from the § 924(c) mandatory minimum, the Court sentenced Thomas to 180 months' imprisonment. (Judgment 2.) Thomas received concurrent sixty-month sentences for each of his four robbery convictions and two consecutive sixty-month sentences for his § 924(c) convictions. (*Id.*)

So far, counting accrued good time credit, Thomas has served approximately seventy eight months of his sentence. (Gov't Resp. 3.) He is forty-one years old and his current anticipated release date is November 17, 2027. (*Id.* at 3–4.)

B

Following the onset of the COVID-19 pandemic, Thomas petitioned the warden at FCI Fort Dix for compassionate release claiming he had bronchitis prior to his incarceration and suffered two ischemic strokes while exercising at the facility in August of 2017. (Mot. for Release 28.) He also represented he is the only caretaker for his father, who suffers from advanced stage Parkinson's disease and is bedridden in his

home. (*Id.* at 5, 28.)  He requested release to his father's residence. (*Id.* at 28.)  The warden denied his request. (*Id.* at 31.)  Thomas unsuccessfully appealed the warden's decision.  *See* (*id.* at 33); (Gov't Resp. 3).[1]

Having exhausted his prison remedies, Thomas now moves in a *pro se* Motion, two Supplemental Motions, a Reply and a Letter to the Court for compassionate release or a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A).[2]  He asserts three bases for relief.  First, he believes his sentence under § 924(c) would be lower under current law. (Def.'s Reply 5–6, ECF No. 137.)  According to Thomas, the First Step Act amended 18 U.S.C. § 924(c) in a way that would not permit the five year stacked sentence he received for his second conviction under that statute because his two convictions were part of the same course of conduct.  *See* (*id.*); (Mot. for Release 1–3); (Second Suppl. Mot. for Release 1, ECF No. 128).

Second, his medical conditions increase his risk of severe illness or death from COVID-19 and his risk of contracting COVID-19 is increased in prison.  *See* (Mot. for Release 1, 12–17); (First Suppl. Mot. for Release 1–4, ECF No. 126); (Second Suppl. Mot. for Release 1–3); (Def.'s Reply 3).  He alleges his conditions include high cholesterol, obesity, heart arrythmia, a history of ischemic strokes at the prison and a history of smoking.  *See* (Mot. for Release 1, 3); (Second Suppl. Mot. for Release 1); (Def.'s Letter to Court, ECF No. 138).  In his initial Motion he states he also suffers from chronic bronchitis, but he later admits his medical records do not support that

---

[1] Thomas claims his appeal was denied on September 24, 2020, *see* (Mot. for Release 2), but provides no record of this denial.  The Government represents Thomas did not receive a decision on his appeal within thirty days.  (Gov't Resp. 3.)  In any event, Thomas has properly exhausted his prison remedies.

[2] The Federal Community Defender Office declined to seek compassionate release on Thomas's behalf.  *See* (Order Referring Motion for Release, ECF No. 119); (Letter Declining to Seek Release, ECF No. 122).

diagnosis.  *See* (Mot. for Release 1); (Second Suppl. Mot for Release 2 (internal quotations omitted)); (Def.'s Reply 2–3).  Rather, he has a "documented [a]cute upper respiratory infection," has been treated for respiratory infections in prison and was treated for bronchitis prior to his current incarceration.  *See* (Second Suppl. Mot for Release 2 (internal quotations omitted)); (Def.'s Reply 2–3).

Third, his father's health has significantly deteriorated since his incarceration. (Mot. for Release 5.)  He wishes to be released to his father's home to provide care and asserts he is his father's only caretaker.  (*Id.* at 1, 5.)

In a January 4, 2021 Letter, Thomas told the Court he tested positive for COVID-19 on January 3 and experienced shortness of breath but "[i]t is much better" now.  *See* (Def.'s Letter to Court).  He did not provide documentation to corroborate this.

## II

### A

A district court may reduce an inmate's sentence as a form of compassionate release only if "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  But before releasing an inmate a court must also "consider[] the factors set forth in section 3553(a)."  *Id.*  Relevant factors include "the nature and circumstances of the offense" and the "need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  *Id.* § 3553(a)(1), (2)(A).

### B

Thomas has not presented extraordinary and compelling reasons for release or sentence reduction.  With respect to his claim that current law warrants lowering his sentence, Thomas misunderstands the application of the First Step Act.  The First Step

Act eliminated twenty-five year mandatory minimum sentences for first time § 924(c) offenders who commit multiple § 924(c) offenses charged in the same indictment. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22. It did not, however, eliminate sentence stacking for multiple § 924(c) offenses charged in the same indictment. *See id.* Nor did it remove the requirement that § 924(c) sentences run consecutive to one another as well as any other term of imprisonment. *See id.* First time offenders who commit multiple § 924(c) violations today face mandatory minimum consecutive sentences of five years (possessing a firearm), seven years (brandishing a firearm) or ten years (discharging a firearm) for *each* count against them. *See* 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii), (c)(1)(D)(ii). Thus, if Thomas were sentenced today, he would face a mandatory minimum consecutive sentence of fourteen years for his two § 924(c) convictions. He fares better with his current ten-year sentence for those convictions.

C

Thomas's health also does not present extraordinary and compelling reasons for release or sentence reduction. His medical records do not corroborate his heart arrythmia or ongoing respiratory issues. *See generally* (Gov't Ex., ECF No. 130); (Second Suppl. Mot. for Release 4–5). They show he was treated for unspecified acute upper respiratory infections in January and June of 2017, but do not indicate issues since that time. *See* (Gov't Ex. 15, 53). And no record provided to the Court states he suffered from bronchitis or any other respiratory issue before incarceration. But even if he had issues then, his maladies prior to incarceration do not support his release now.

Ischemic strokes and high cholesterol are not COVID-19 risk factors. *See*

5

Coronavirus Disease 2019, *People with Certain Medical Conditions*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last visited Jan. 8, 2021). In any event, those conditions appear to be managed in prison. Thomas reported to the BOP in June of 2020 he "feels he is fully back to normal with no residual deficits" from his strokes. (Gov't Ex. 3); *see also* (*id.* at 34, 37, 49 (plan of care provided relating to cryptogenic stroke)). He is prescribed Atorvastatin and his cholesterol is within normal range. *See* (*id.* at 4–5, 21, 68).

Thomas's most recently recorded BMI is 33.8 and his medical records show he reported smoking one pack of cigarettes per day and smoking marijuana daily from ages twenty-two to thirty-six. *See* (*id.* at 4, 33.) Smoking and obesity are COVID-19 risk factors, but Thomas's conditions are not sufficient to justify his release. He has been drug and tobacco free for six years and presents no ailments associated with smoking. *See generally* (Def.'s Letter to Court); (Gov't Ex); *see also United States v. Rager*, No. 2:13-cr-199, 2020 WL 7395324, at *3 (S.D. Ohio Dec. 17, 2020) (denying release where medical records showed no physical symptoms from defendant's history of smoking and evidence did not demonstrate defendant smoked since 2014 federal detainment). And obesity, absent other evidence of serious conditions placing Thomas at risk of serious illness from COVID-19, does not warrant a reduction in Thomas's sentence. *See, e.g.*, *United States v. Williams*, No. 15-471-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) ("[T]he fact that [defendant] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, extraordinary reasons justify the reduction of his sentence."); *United States v. Grasha*, --- F. Supp. 3d -

---, 2020 WL 5747829, at *4 (W.D. Pa. Sept. 24, 2020) (obesity and BMI of 48 presented a serious risk but did "not arise to an extraordinary and compelling reason for release."); *United States v. Holmes*, No. , 2020 WL 4504440, at *2 (E.D. Pa. Aug. 5, 2020) (46-year-old with BMI of 36.8 and medicated asthma and hypertension did not present serious medical conditions warranting release); *United States v. Whitsell*, No. 09-cr-20236, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) ("[O]besity by itself is not sufficient to warrant early release under the compassionate release standard. . . . Other district courts have granted compassionate release only upon a finding of numerous and severe medical conditions that place them at significantly higher risk for severe illness from COVID-19."); *United States v. Votaw*, No. 2:11-cr-00514, 2020 WL 3868468, at *2 (E.D. Cal. July 9, 2020) (BMI of 37.9 insufficient for relief where defendant presented no other serious underlying heath conditions and did not show he was unable to manage his health).

Thomas's case is not bolstered by his claim that he currently has COVID-19. The Court has no documentation of his symptoms, and numerous courts have denied release at least partially because a movant already contracted the virus. *See, e.g.*, *United States v. Evans*, No. 13-173, 2020 WL 6144006, at *5–6 (W.D. Pa. Oct. 20, 2020); *United States v. Amico*, No. 19-86, 2020 WL 5407913, at *4 (E.D. Pa. Sept. 9, 2020) (collecting cases); *United States v. Hilts*, No. 11-133, 2020 WL 4450373, at *2 (W.D. Pa. Aug. 3, 2020).

D

Thomas's alleged family circumstances do not present extraordinary and compelling reasons for a sentence reduction either. "Judges in this District have yet to

7

find care for elderly or ill parents r[i]ses to the level of extraordinary and compelling circumstance warranting release." *United States v. Moore*, No. 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020); *see also United States v. Gaskin*, No. 15-352, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) (desire to care for elderly parents not an extraordinary circumstance); *United States v. Ingram*, No. 2:14-cr-40, 2020 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."); Application Note 1 to U.S.S.G. § 1B1.13 (limiting qualifying family circumstances to death or incapacitation of the caregiver for the defendant's minor child or incapacitation of the defendant's spouse or registered partner). Thomas concedes his desire to care for his father alone "might not qualify as a reason for release." (Def.'s Reply 5.)

E

Even if extraordinary and compelling reasons did exist for Thomas's release, the 18 U.S.C. § 3353(a) factors counsel against releasing him. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release). While Thomas makes much of his lesser role in his charged offenses, he earned his sentence by knowingly and voluntarily facilitating violent robberies. Releasing Thomas after serving less than half his sentence would be inconsistent with the seriousness of his crimes and fail to promote respect for the law or provide just punishment for his actions. *See* 18 U.S.C. § 3553(a)(1), (2)(A); *see also United States v. Daniels*, No. 15-127, 2020 WL 4674125, at *4 (E.D. Pa. Aug. 12, 2020) (Defendant "has not yet served even half of his 180-month sentence. If the Court granted compassionate release at this

8

stage, his sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for his offense."); *United States v. Holmes*, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Releasing defendant [with hypertension, asthma and obesity] now would cut his current sentence by almost half and would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct.").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.